|2CANNELLA, Judge.
Defendant, Johnny Sider, appeals from his conviction for possession of over 200 grams of cocaine and his sentence to twenty-five years at hard labor without benefit of parole,, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence and remand.
On July 21, 1995, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession of over 200 grams of cocaine, in violation of La. R.S. 40:967(F). At his arraignment on October 10, 1995, defendant entered a plea of not guilty. Thereafter, on October 17, 1995, defendant filed a motion to suppress evidence. The trial court heard this motion on December 5,1995.
The testimony at the suppression hearing was that on June 20, 1995, Lieutenant Glen Davis of the Jefferson Parish Sheriff’s Office, Narcotics UUnit, and Agent Ronald Hoefeld of the Narcotics Interdiction Task Force at the New Orleans International Airport were on duty. Neither of the officers were in uniform and their guns were concealed. According to Officer Davis, they had set up a surveillance of Southwest Airline Flight 516, arriving from Houston, a source city for drugs. Officer Davis testified that at approximately 7:20 p.m., as the passengers deplaned, defendant drew their attention because he acted very nervous as he walked through the concourse. Officer Davis testified that he and Agent Hoefeld stood about *931 twenty feet away from defendant. Defendant walked towards the main lobby at a fast pace, passing up passengers who had were ahead of him, and continually looked back over his shoulder and from side to side, as if he were afraid that someone was following him. Officer Davis testified that defendant was carrying a small briefcase, twirling it as he walked. He stated that defendant appeared very hyper. The officers followed defendant, continuing their surveillance from about fifteen feet behind.
Officer Davis testified that defendant entered the main lobby of the airport, bypassed the down escalator, approached a uniformed officer standing near the escalator and asked where he might catch a cab. Defendant walked past Officer Davis toward the down escalator and made direct eye contact with him. Officer Davis explained that defendant’s eyes were bulging and that he had a nervous, concerned look on his face. The officer stated that he and Agent Hoefeld followed defendant down the escalator, and that defendant turned around several times and stared at the officers.
On reaching the ground floor of the airport, Officer Davis testified that defendant did not pick up any luggage, but walked toward the exit doors. ^Officer Davis approached defendant, identified himself as a police officer, showed defendant his police identification and asked to speak with him. Officer Davis said that Agent Hoefeld also approached defendant and showed him his police identification. Officer Davis testified that defendant verbally consented to speak with him.
Officer Davis stated that he asked defendant from where he was arriving and that defendant told him he had just arrived from Houston. When the officer asked defendant whether he had his plane ticket, defendant retrieved it from his pocket and handed it to the officer. The officer testified that defendant’s hands were trembling as he produced the ticket. Officer Davis inspected the ticket, noticing that it was a one-way ticket, purchased with cash at the ticket counter in the Houston airport by a Mr. Joseph Sterling. Officer Davis handed the ticket back to defendant and asked defendant what his name was. Defendant told him that his name was Joseph Sterling. Officer Davis asked defendant for some identification, but defendant replied that he had none with him. Officer Davis stated that defendant was sweating profusely, was acting extremely hyper, and was moving from one side to another on the balls of his feet. Officer Davis asked defendant how long he had been in Houston and defendant told him three or four ■ days. The officer asked defendant whether he had any checked luggage and defendant told him that he only had the small briefcase. Officer Davis testified that, after advising defendant that both he and Agent Hoefeld were narcotics agents, he asked for defendant’s consent to search his person and his briefcase. The officer testified that defendant verbally consented to these searches.
^Officer Davis testified that defendant opened his briefcase for the officers’ inspection, throwing papers and shuffling them around. After seeing nothing unusual in the briefcase, the officer told defendant that a men’s room was adjacent to where they were standing and asked if defendant would mind going there so that the officers could search his person. According to Officer Davis, defendant again consented and the three of them began to walk to the restroom. Officer Davis testified that neither he nor Agent Hoefeld ever touched defendant. He further testified that about fifteen feet from the restroom, defendant came to a complete stop and asked the officers “What do you guys do?” Officer Davis stated that before either officer could respond, defendant shoved both officers and began to run from them. According to Officer Davis, until defendant shoved them he was free to leave at any time, “had he so requested.” However, after defendant pushed them, he was no longer free to leave. Defendant was arrested for battery on the police officers. Officer Davis testified that defendant only ran a couple of steps before they caught up with him and, after a struggle, handcuffed him and brought him to the police room in the airport. The officers conducted a search following this arrest and found approximately 390 grams of cocaine in defendant’s left boot. Officer Davis testified that defendant was advised of his “Miranda *932 rights” and subsequently signed forms waiving his rights and consenting to a search of his apartment. The officer testified that during the search of defendant’s apartment, a scale, ziplock bags and some cutting agents were found.
In his testimony at the suppression hearing, Agent Hoefeld largely corroborated Officer Davis’ testimony, that defendant seemed extremely nervous and hyper and that defendant was sweating profusely on his 16forehead. He also testified that a uniformed officer stood a short distance behind him and that defendant was free to leave at any time until he struck the two officers.
Contrary to the officers’ testimony, defendant testified that as he deplaned, he was talking with the woman who had sat next to him on the flight. He testified that he was not nervous or hyper, and denied turning his head around or from side to side. Defendant testified that he did not pass up the two men who had deplaned before him. He also testified that before taking the escalator downstairs, he asked a woman at the information booth where to catch a taxi. Defendant said that as he turned around, there were three officers standing behind him, one of whom was in uniform. Defendant testified that Officer Davis asked him to stop so that he could ask him a few questions. Defendant admitted that he had consented to Officer Davis’ search of his briefcase, but claimed that after Officer Davis searched his briefcase, he asked Officer Davis whether he was under arrest. Defendant further claimed that after Officer Davis said that he was not under arrest, defendant told the officers that he was ready to leave, that he had been held up in the Houston airport and that he was ready to go home. However, according to defendant, Officer Davis said “Halt,” grabbed his arm, and said “No, we want to search you first.” Defendant stated that Officer Davis held his arm as they began to walk and that the other two officers followed behind them. Defendant testified further that he never pushed any of the three officers, that he merely tried to run away. He explained that he only got a few steps before the officers tackled him.
|7After hearing the testimony at the suppression hearing and reading the memoranda later submitted by the prosecution and the defense, the trial court issued a written ruling that held as follows:
Given the fact that Houston is source city for drugs, that Sider carried little baggage, and that he appeared nervous to the agents in his actions (and became more nervous as the interaction progressed), the initial stop by the agents was proper under the circumstances. Moreover, the fact that Sider had a one-way ticket purchased with cash and eventually attempted to escape renders the subsequent actions of the agents proper as well. The defendant’s Motion to Suppress the Evidence is therefore denied.
Following this ruling on his motion, defendant withdrew his prior plea of not guilty and entered a plea of guilty to the charged offense, reserving his right to appeal the adverse ruling on his suppression motion pursuant to State v. Crosby, 388 So.2d 584 (La.1976). In accordance with the plea agreement, the trial judge sentenced defendant to twenty-five years at hard labor without benefit of parole, probation or suspension of sentence, but with credit for time served. Defendant appealed.
On appeal the defendant assigns three errors, arguing that the trial court erred in denying his motion to suppress and that the trial court imposed an excessive sentence.
In arguing that the trial court erred in denying the motion to suppress, defendant argues that the stop by the officers in the airport was an impermissible investigatory detention, without reasonable cause, that escalated into an arrest without probable cause. Further, defendant argues that he did not consent to the search and any actions which may have been interpreted as consent are vitiated by the illegality of the stop.
The United States Constitution and the Louisiana Constitution prohibit unreasonable searches and seizures. U.S. Const. Amend. 4; La. Const. Art. j8l, Sec. 5. However, law enforcement officers do have the right to stop and interrogate one who is reasonably suspected of criminal conduct. *933 Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In evaluating the validity of such a stop, courts must consider the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585-1586, 104 L.Ed.2d 1 (1989). State v. Davis, 547 So.2d 1367, 1378-1379 (La.App. 5 Cir.1989), writ denied, 556 So.2d 53 (La.1990).
In United States v. Sokolow, supra, the Supreme Court held that if a person engages in a number of acts which, when viewed together, make it plausible to believe that he may be a drug courier, this may be sufficient grounds for suspicion of criminal activity and thus justify a Terry stop, even though each act taken alone is entirely consistent with innocence.
Similarly, this court, in State v. Davis, 547 So.2d 1367 (La.App. 5th Cir.1989), writ denied, 556 So.2d 53 (La.1990), found that the following facts justified an investigatory stop of a passenger disembarking from an airplane: (1) defendant arrived from a city known to be a source city for drugs; (2) defendant was one of the first passengers to deplane and his nervous demeanor attracted the attention of the officer; (3) as defendant walked up the concourse, he kept looking around to see if he was being watched or followed; (4) defendant paced nervously while waiting for his baggage; (5) defendant continued to act nervous after claiming his luggage and going to the cab stand to catch a cab; (6) when defendant gave the officer his ticket, his hands were trembling; (7) the ticket was a one-way ticket purchased with cash; and (8) defendant’s speech became broken and his breathing became labored.
IsAppIying the above to the instant ease, we find that there was more than enough evidence present for the officers involved to have a reasonable suspicion of criminal activity, justifying the initial stop of defendant.
The testimony of the two police officers indicates that: (1) defendant arrived from Houston, a city known to be a source city for drugs; (2) defendant acted very nervous and hyper as he deplaned, walking fast enough so as to pass up passengers that deplaned before him; (3) as defendant walked up the concourse, he was constantly looking back over his shoulder and from side to side, as if he were afraid someone was following him; (4) defendant’s eyes were bulging as he made direct eye contact with Officer Davis while getting on the down escalator; (5) while on the escalator, defendant turned around several times to look at the officers on the escalator behind him. Thus, considering the “totality of the circumstances,” we find that the officers had reasonable suspicion to make the investigatory stop of defendant.
Next, defendant argues that even if the initial stop was legal, it quickly escalated to an unconstitutional seizure or arrest without probable cause. Defendant argues that the three officers surrounding defendant and then finally grabbing his arm and instructing him to come into the bathroom amounted to an illegal seizure or arrest of the defendant. Thus it is argued that because defendant was illegally seized before the physical confrontation with the officers that lead to his official arrest for battery, the evidence in question was obtained illegally.
In considering when a Terry stop escalates to an impermissible seizure, the Supreme Court in State v. Moreno, 619 So.2d 62 (La.1993) found that “ ... the suspect’s detention beyond initial questioning for the | ippurpose of securing a search warrant is not merely a brief intrusion on liberty permissible under La.C.Cr.P. art. 215.1 or the Terry doctrine, but a taking into custody, or an arrest, justifiable only on the basis of probable cause.” In Moreno, the court ruled that defendant was arrested for purposes of the Fourth Amendment of the United States Constitution when two police officers took defendant into custody at the airport by forcing her to walk with them to their office, located on another floor, after she had already refused to consent to a full body search. In so holding, the court noted some factors to consider in determining whether a seizure had occurred: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physically touching the person; or (4) the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.
*934 The problem with defendant’s argument on this point is that it is not supported by the record. The two officers testified that they were not in uniform and did not have their guns drawn or exposed. Following the stop, the officers asked to see defendant’s plane ticket and discovered that the defendant had a one-way ticket purchased with cash. The ticket was in the name of Joseph Sterling, but defendant stated that he had no identification. They stated that defendant was trembling as he handed them the plane ticket. The officers testified that they asked defendant if they could search his briefcase and person and he consented. The briefcase was basically empty. They then asked the defendant if he would like to go into the adjacent bathroom to be searched. He again consented and the three men began walking toward the bathroom. The officers testified that they had no physical contact with defendant at that time and that he was free to go. | nAlthough defendant’s testimony was substantially different form the officers’, the record nevertheless provides ample support for the trial court finding that the arrest did not occur until after defendant committed a battery on the officers and, thus, the ultimate seizure of the evidence pursuant to a lawful arrest was not illegal.
This case is clearly distinguishable from Moreno where the defendant had expressly refused consent for the search and was being forced to accompany the officers to their office on another floor of the airport.
Rather, this case is more closely related to the case of State v. Garriga, 592 So.2d 453 (La.App. 5th Cir.1991), writ denied, 596 So.2d 553 (La.1992) where this court held:
In the present case, when the officers first approached defendant, there was no “seizure” within the meaning of the Fourth Amendment. U.S. v. Mendenhall, [446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)] supra. There is not objective indication that defendant was no free to leave or to walk away from the initial encounter. The officers were not in uniforms nor did they display any weapons. The entire encounter appears to have taken place with defendant’s consent and cooperation and occurred in a public area.
Likewise, we find no merit in defendant’s argument that he was unconstitutionally seized. There is no evidence other than defendant’s testimony that he was not free to walk away from the initial encounter. The search of the briefcase, as well as defendant’s accompaniment of the officers towards the bathroom was consensual. Therefore, when defendant pushed the two officers, thereby committing a battery, he was legally arrested and the search following that arrest was legal. Accordingly, we find no error in the court’s ruling denying defendant’s motion to suppress.
liaNext, defendant argues that the sentence imposed is constitutionally excessive. Defendant was sentenced to 25 years at hard labor, without benefit of parole, probation or suspension of sentence. Defendant pled guilty to knowingly or intentionally possessing greater than 200 grams of cocaine. The penalty range for that offense, contained in La. R.S. 40:967(F)(l)(b), is from twenty to sixty years. Thus, defendant’s sentence to twenty-five years does not readily appear excessive.
Furthermore, however, defendant entered into a plea agreement wherein the sentence of twenty-five years was agreed upon as part of that agreement. Under La. C.Cr.P. art. 881.2(A)(2), “[t]he defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.” Therefore, defendant is precluded from raising, on appeal, a claim that the sentence imposed is excessive. State v. Brown, 95-377 (La.App. 5th Cir. 11/15/95) 665 So.2d 477.
Moreover, defendant failed to move to reconsider his sentence, either orally or in writing. Absent such a motion, appellate review is precluded. La.C.Cr.P. art. 881.1. State v. Alas, 622 So.2d 836 (La.App. 5th Cir.1993), writs denied, 629 So.2d 397 (La.1993).
Accordingly, we find that defendant’s claim that his sentence is excessive is not renewable in this appeal and is affirmed as imposed.
Finally, we have reviewed the record for errors patent in compliance with La. C.Cr.P. art. 920 and note that the trial court *935 failed to give defendant notice of the prescriptive period for post conviction relief, as prescribed by La.C.Cr.P. art. 930.8. However, the failure to so advise the defendant, as | ^prescribed, is not grounds for reversal. State v. Crossley, 94-965 (La.App. 5th Cir. 3/15/95), 653 So.2d 631, writs denied, 95-0959, 660 So.2d 459 (La.9/15/95). Rather, on remand, the trial court is ordered to inform the defendant as provided in La.C.Cr.P. art. 930.8 by sending written notice to defendant within ten days after rendition of this opinion and to file written proof in the' record that defendant received such notice.
Accordingly, for the foregoing reasons, defendant’s conviction for possession of over 200 grams of cocaine and sentence to twenty-five years at hard labor, without benefit of parole, probation or suspension of sentence are affirmed and the case is remanded to the trial court to notify defendant and provide record evidence that defendant has been provided the notice mandated by La.C.Cr.P. art. 930.8.

CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.