839 So.2d 214 (2003)
STATE of Louisiana
v.
Joseph H. PHAM.
No. 2001-KA-2199.
Court of Appeal of Louisiana, Fourth Circuit.
January 22, 2003.
*217 Harry F. Connick, District Attorney, Scott Peebles, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Robert Jenkins, Jr., New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
WILLIAM H. BYRNES, III, Chief Judge.
The defendant, Joseph H. Pham, appeals his conviction and sentence for possession of cocaine. We affirm.

Procedural History
On May 9, 2000, Joseph Pham was charged by bill of information with one count of possession of more than two hundred grams but less than four hundred grams of cocaine in violation of La. R.S. 40:967. Pham pleaded not guilty at his May 17, 2000, arraignment. After a hearing on June 9, 2000, and June 28, 2000, the trial court denied Pham's motion to suppress the evidence. After trial on March 12, 2001, and March 14, 2001, a twelve-member jury found Pham guilty as charged. On March 29, 2001, the trial court denied Pham's motion for new trial. The trial court ordered a pre-sentence investigation, and on August 17, 2001, the trial court sentenced Pham to twenty-five years in the Department of Corrections. The trial court also denied Pham's oral motion to reconsider his sentence and granted his motion for appeal.

Facts
On June 29, 2000, Officer Joseph Williams, of the New Orleans Police Department, testified at the motion to suppress hearing that he received information from a confidential informant that a large quantity of cocaine had arrived from Houston, Texas into the New Orleans area. The drugs were first taken to a location in Avondale, Louisiana and then disbursed to other locations including New Orleans East. The informant stated that one of the New Orleans East locations was 4830 Treves Street. The informant further stated that at that location the police would find an Asian woman named Tu Wit [Tuyet Doung], who was involved in the dealing or distribution of drugs. The informant communicated that the information was based on personal observation of drugs at the Treves Street location.
Detectives Nicole Gouch and Eugene Landry conducted a surveillance of the Treves Street location to verify the informant's information. Officer Williams testified that on December 7, 1999, the detectives observed a brown Lexus and a red Acura Integra arrive at the Treves Street location. Two Asian males were driving the vehicles. An Asian woman, later identified as Tu Wit [Tuyet Doung], greeted the males. While the males were at the Treves Street location, Officer Williams testified that he received further information from his informant that a delivery would be made from the Treves location to *218 the area of a church at Dwyer and Willowbrook Roads. The detectives observed the males exit the Treves Street location, and Pham entered the Lexus carrying a box. Pham then went to the church location where he parked next to a white Oldsmobile, also being driven by an Asian male. The two vehicles went to 5103 Lemans Street, a location known for drug activity. Pham and the other Asian male exited their vehicles and entered the Lemans address.
The detectives observed Pham still carrying the box when he exited the Lemans location. Officer Williams testified that the informant told him that Pham would be carrying cocaine in the box, and that Pham would be making deliveries of the drugs concealed in the box. The detectives notified Detectives Christian Hart and Jake Schnapp that Pham was in the process of making deliveries of the drugs contained in the box.
Detective Hart testified that they stopped Pham's vehicle at Lemans and Dwyer Road. Detective Hart further testified that as he approached the driver's side of the vehicle, he saw Pham attempt to conceal the box in a large pocket on his sweatshirt. Detective Hart testified that Pham was removed from his vehicle, the detective removed the box from Pham's pocket, and Pham was handcuffed. Detective Hart opened the box and it contained a white powder substance that appeared to be cocaine. Pham was advised of his rights and arrested. Detective Hart also confiscated four hundred thirty-two dollars and a cell phone.

Errors Patent
A review of the record revealed no errors patent.

Standard of Review of a Motion to Suppress
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La. App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The appellate court reviews the district court's findings of fact on a motion to suppress under a clearly erroneous standard, and will review the district court's ultimate determination of Fourth Amendment reasonableness de novo. U.S. v. Seals, 987 F.2d 1102 (5 Cir.1993), cert. denied, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). On mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo. United States v. O'Keefe, 128 F.3d 885 (5 Cir. 1997), cert. denied, 523 U.S. 1078, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998). An appellate court reviews the district court's determinations of reasonable suspicion and probable cause de novo. U.S. v. Green, 111 F.3d 515 (7 Cir.1997), cert. denied sub nom. Green v. U.S., 522 U.S. 973, 118 S.Ct. 427, 139 L.Ed.2d 328 (1997). Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698 (La.App. 1 Cir.1993), writ denied 629 So.2d 1138 (La.1993). In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence from the motion hearing. It may also consider the evidence presented at trial. State v. Nogess, 98-0670, p. 1 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.

Reasonable Suspicion for an Investigatory Stop
A police officer may engage anyone in conversation, even without reasonable grounds to believe they have committed a crime. Goins v. Wal-mart, XXXX-XXXX (La.11/29/01), 800 So.2d 783; State v. Duplessis, 391 So.2d 1116, 1117 (La.1980). In *219 the present case, the officers stopped Pham's vehicle.
La.C.Cr.P. art. 215.1 provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and demand of him his name, address, and an explanation of his actions.
In State v. Anderson, 96-0810, p. 2 (La. App. 4 Cir. 5/21/97), 696 So.2d 105, 106, this Court noted:
A police officer has the right to stop a person and investigate conduct when he has a reasonable suspicion that the person is, has been, or is about to be engaged in criminal conduct.... Reasonable suspicion for an investigatory stop is something less than probable cause; and, it must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual's right to be free from governmental interference....
The totality of the circumstances must be considered in determining whether reasonable suspicion exists.... An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct....
[Citations omitted.]
In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069, p. 4 (La.App. 4 Cir. 5/7/97), 694 So.2d 549, 552.
In the present case, the officers had reasonable suspicion to stop the vehicle. At issue is whether the officers also had probable cause to arrest Pham when they seized the box that Pham placed in the oversized pocket of his sweatshirt.

Probable Cause to Arrest
La.C.Cr.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or in close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;
. . .
It is not a prerequisite for the existence of probable cause to make an arrest that the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances. State v. Gates, 24,995 (La.App. 2 Cir. 1/19/94), 630 So.2d 1345, writ denied sub nom. Gates v. Jones, 94-0640 (La.6/17/94), 638 So.2d 1091. An arresting officer need only have a reasonable basis for believing that his information and conclusions are correct. Rodriguez v. Deen, 33,308 (La.App. 2 Cir. 5/10/00), 759 So.2d 1032, writ denied, XXXX-XXXX (La.6/23/00), 765 So.2d 1049. For an arrest, the law does not require that "reasonable cause to believe" be established by evidence sufficient to convict; the arresting officer need not be convinced *220 beyond a reasonable doubt of the arrested person's guilt. La.C.Cr.P. art. 213; State v. Weinberg, 364 So.2d 964 (La.1978). The standard of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. Id.
Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average police officers, can be expected to act. State v. Franklin, 598 So.2d 1147 (La.App. 1 Cir.1992), writ denied, 604 So.2d 1317 (La.1992). The reputation of the area is an articulable fact upon which a police officer may legitimately rely. Id. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or a preponderance standard demands. State v. Green, 98-1021 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, writ denied, 96-2610 (La.6/20/97), 695 So.2d 1348. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. Deference should be given to the experience of the police who were present at the time of the incident. Id. The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. Police are not required to arrest an individual at the point at which probable cause for arrest arises. State v. Coleman, 412 So.2d 532 (La.1982).
Pursuant to a lawful arrest, the officer may lawfully conduct a full search of the arrestee and the area within his immediate control for weapons and for evidence of a crime. State v. Morgan, 445 So.2d 50, 51 (La.App. 4 Cir.1984), writ denied, 446 So.2d 317 (La.1984).
In State v. Shepherd, 470 So.2d 608 (La. App. 1 Cir.1985), the First Circuit upheld the stop and arrest of a suspect based on a reliable confidential informant's tip that was corroborated by the police. The police did not observe the possession of narcotics until after the suspect was arrested. The appellate court reviewed Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Draper v. U.S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Ruffin, 448 So.2d 1274 (La.1984), and State v. Raheem, 464 So.2d 293 (La.1985). The First Circuit stated:
The instant case is more factually similar to Draper and Gates than to Ruffin and Raheem. In the instant case, as in Draper and Gates, the informant predicted future acts of the suspect and those acts occurred and were corroborated by police surveillance. In the instant case, the informant predicted the suspect would leave her home, go to her mother's home and pick up drugs, leave her mother's home and get on the Interstate in her vehicle to deliver the drugs in South Baton Rouge and would exit the Interstate on the Washington Street exit. All of these predicted actions occurred and were corroborated, except for the ultimate fact of possession of the drugs and the delivery of the drugs. [FN3 omitted.] As indicated in Draper and Gates, when the future actions of a suspect are accurately predicted by a CI and corroborated by the police, there is a reasonable basis to believe the CI's unverified allegation of drug possession is also true. The accurate prediction of Shepherd's travel plans herein indicates a "fair probability" that the CI's basis of knowledge was either Shepherd herself *221 or someone she trusted. As indicated in Draper and Gates, the corroboration of the "innocent" behavior provides probable cause to believe the allegation of drug possession in the informant's tip is reliable. The instant case is stronger than Draper and Gates because the reliability of the CI herein is strengthened by a three year period of reliable cooperation with the police. We conclude, after considering the totality of the circumstances, there was probable cause to stop and arrest Shepherd and search her vehicle. [FN4 omitted.]

Id., 470 So.2d at 616.
In the present case the corroboration of the informant's information by independent police surveillance gave the officers reasonable cause to believe that Pham was engaging in illegal activities. The informant was not anonymous or untested, but was reliable and had previously given information to the police that led to prior arrests. Officer Joseph Williams testified that: "... the informant has provided information which resulted in the arrest of individuals engaged in narcotics violations." The informant's reliability and the observations by the police officers supported the informant's information and were sufficient for the officers to have probable cause to arrest and search Pham.
The reliable informant communicated to the police that a shipment of narcotics had been distributed to a residence at 4830 Treves Street, where an Asian female would be present. The informant knew about the contraband from personal observation of its distribution within the last 48 hours. The presence of the Asian female was corroborated when the officers saw two Asian males, one of whom was Pham, approach the residence in separate cars and was greeted by an Asian female at the residence.
The reliable informant contacted the police again and gave additional information that a delivery would be made from the residence to the area of a church located at the intersection of Dwyer and Willowbrook Road. At. 6:15 p.m., the police observed Pham leave the residence while holding a box in his hand. He entered his vehicle with the box and drove to the church as predicted by the informant. The officers saw Pham in the church parking lot with another male who drove a white Oldsmobile when Pham left in the light brown Lexus.
The two vehicles went to a location on East Lemans known for drug trafficking. Officer Joseph Williams testified at the motion hearing that: "After a brief meeting they departed the church parking lot and went to 5103 East Lemans Street. That location is a known drug trafficking outlet where we have made arrests in the past." Pham entered the 5103 East Lemans residence with the box.
The reliable informant again contacted the police to advise them that Pham was in the process of making deliveries of cocaine concealed in the box. Pham came out of the residence and drove on East Lemans back towards Dwyer, when the police stopped the vehicle.
The officers' observations supported the reliable informant's information, and the totality of circumstances, including being located in the area of known drug activity, were consistent with a drug trader's actions. The police corroborated the reliable informant's information under the totality of circumstances that supported the officers' belief that the box contained contraband. At trial, Detective Hart testified that when the officers stopped the Lexus, the detective went to the driver's side and shouted to Pham: "Show me your hands. Show me your hands." Detective Hart stated: "The whole time I was yelling this *222 he wasn't showing his hands. The male reached to the right, apparently the passenger seat, and took a box and tried to place it into the front pocket of the sweatshirt that he was wearing." Pham's movement to conceal the box in the front pouch pocket of his sweatshirt provided additional support to give the officers reasonable cause to believe that Pham was engaged in illegal drug activities.
The trial court found that the automobile exception applied and exigent circumstances existed. The automobile exception was established due to the mobility of automobiles. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The exception was then extended to packages located within the vehicle. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The detective saw Pham enter the vehicle with the box. The automobile exception applied where the officers had probable cause to believe drugs were in the vehicle, and exigent circumstances existed for search of the vehicle and the defendant.
Based on their information and observations, the officers had probable cause to arrest Pham before they actually seized the box of contraband and confirmed that its contents consisted of illegal narcotics. Under the totality of circumstances, the stop and search of the defendant, as well as the seizure of the contraband in the box, were lawfully conducted pursuant to the existence of probable cause for Pham's arrest.

Standard of Review for an Excessive Sentence
The defendant complains the trial court erred in sentencing him to twenty-five years as a first time offender because his sentence was excessive.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La. 1983).
If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Walker, 96-112 (La.App.3 Cir. 6/5/96), 677 So.2d 532, 535, writ denied, 96-1767 (La.12/6/96), 684 So.2d 924, citing State v. Howard, 414 So.2d 1210 (La.1982).
Under La. R.S. 40:967(F)(1)(b) the penalty for a first time possession offender provides:
(b) Any person who knowingly or intentionally possesses two hundred *223 grams or more, but less than four hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than thirty years, and to pay a fine of not less than one hundred thousand dollars, nor more than three hundred fifty thousand dollars.
Pham avers the trial court based its sentence on Pham's failure to appear in court and on the amount of cocaine found in Pham's possession. Because the sentence is determined by the amount of cocaine found in his possession, the trial court properly considered this factor. The trial court may have been concerned with what Pham may have been doing when he failed to appear, but the trial court also was concerned that Pham's actions could have jeopardized the lives of others. The trial court stated:
Everybody that's involved in drug activity anywhere in this community is jeopardizing the lives of others, setting up the opportunity for random drug shootings with innocent children being shot and you're dealing heavily. You're in it big time. Anybody in possession of eight and one-half ounces of cocaine isn't a passive player, isn't a recreational user.
In State v. Sider, 96-508 (La.App. 5 Cir. 12/11/96), 686 So.2d 929, writ denied, 97-0094 (La.5/16/97), 693 So.2d 797, the Fifth Circuit found that a sentence of twenty-five years was not excessive for a conviction of possession of over two hundred grams of cocaine. In the present case, Pham failed to prove the trial court abused its liberal discretion allowed in sentencing. He also failed to rebut the presumption that the sentence is constitutional.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.