PAUL A. BONIN, Judge.
1?A few days after his sentencing for a felony, Shelby Fields was visited by probation officers at the house he had identified to them as his residence. While inspecting the house, one of the probation officers observed the butt or handle of a firearm between the mattresses of a bed. A less-than-unanimous jury convicted him of being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1. He was adjudicated a second felony offender and sentenced to ten years. Mr. Fields assigns five errors.[1]
We first consider his argument that the evidence is insufficient to support a guilty verdict under the well-known Jackson v. Virginia standard. Based upon our review of all of the evidence, we conclude that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that all the elements of La. R.S. 14:95.1 were proven beyond a reasonable doubt.
We next consider his argument that the trial judge abused his discretion in denying the motion to suppress the evidence. Because we find that the probation officers were authorized to be present in his dwelling, were authorized to |,^investigate whether he had been residing there, and observed the firearm in plain view, the prosecution established a well-recognized exception to the warrant requirement and the seizure of the firearm was lawful.
We then consider Mr. Fields’ argument respecting the hearing on his motion for new trial and the absence of his trial counsel. In order to decide this claim, we need not decide whether a hearing on a motion for new trial is a critical stage of the proceedings against Mr. Fields. The only arguments raised in the motion for new trial were (i) whether the prosecution produced sufficient evidence to prove beyond a reasonable doubt that Mr. Fields had possession of the weapon, and (ii) whether the probation agents had the authority to enter the dwelling and conduct a walkthrough of the residence, including the bedroom where the weapon was found. Because we dispose of both of these assignments in the treatment of the preceding assignments of error, we find that Mr. Fields cannot show any prejudice either in the denial of his motion or in the absence of his trial counsel at the hearing. Thus, no relief can be granted with respect to this assignment of error.
We then consider his argument about the sentence and the ten-year “cleansing period” between his 1998 first conviction and his current conviction as a convicted felon in possession of a firearm. We conclude that, even if we could find that Mr. Fields preserved this issue for appellate review, this assignment requires no relief from us because Mr. Fields received the minimum sentence available whether or not he is adjudicated an habitual offender.
*314 We explain in greater detail our dispositions of these assignments of error in the Parts which follow. But before we begin our explanation, we consider and summarily dispose of Mr. Fields’ final assignment of error, which is that the Sixth Amendment, as incorporated by the Fourteenth Amendment, requires a unanimous _yury verdict, and that as a result La. Const, art. I, § 17 and La.C.Cr.P. art. 782 A, which authorize less-than-unanimous juries in certain cases, are unconstitutional. We reject this contention without further elaboration. See State v. Bertrand, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, and its progeny.[2]
Thus, we affirm the conviction and sentence of Mr. Fields.[3]
We now turn to a fuller explanation of those matters we indicated above.
I
Following guilty pleas to felonies involving possession of controlled dangerous substances (heroin and cocaine), Shelby Fields was placed on active or supervised probation as a condition of receiving suspended sentences. Shortly afterwards, he appeared for his first meeting with probation officer Peter Barr. The officer identified the conditions of probation, which was signed by the officer and the defendant. In that meeting Mr. Fields confirmed his current residence to be 8910 Gervais Street and scheduled a subsequent meeting to take place a week later. |sThe subsequent meeting was to be his first appointment with Agent Joseph Spino, the probation officer assigned to him. But Mr. Fields failed to appear for his appointment with Agent Spino.
The following day, Agent Spino and Agent Francisco Dean went to the Gervais Street house to perform a residence check. When the officers arrived at the residence, Agent Spino knocked on the door. A male voice asked, “Who is it?” Agent Spino announced, “Probation.” Thirty to forty seconds went by, and the officer told the man to open the door. Mr. Fields then *315 opened the door, and the officers entered the residence. Agent Spino asked Mr. Fields why he missed his appointment. He replied that he forgot about the appointment. The officer noticed a female, later identified as Mr. Fields’ girlfriend, standing in the hallway at that time. Agent Spino asked Mr. Fields which bedroom was his, and the female stated that they could not go in there. Agent Spino explained that under the conditions of probation, the officers had the right to conduct a monthly residence check to verify a probationer’s residency. At that time, Agent Dean entered the bedroom. Mr. Fields informed Agent Spino that he would not be staying with his girlfriend because they were not getting along. He also advised the officer that he would be moving to another address.
As Agent Dean entered the bedroom, he saw the handle of a pistol in plain view lodged between the mattress and the box spring of the bed. Agent Dean secured the weapon and advised Agent Spino that there was a weapon in the residence. Agent Dean testified that the weapon, a .40 caliber Smith & Wesson semiautomatic pistol, was loaded. The magazine had thirteen live rounds.
Mr. Fields and his girlfriend were advised of their Miranda rights. Mr. Fields stated that he knew to whom the gun belonged, and that he would take the |ficharge. Agent Dean testified that the bedroom appeared to be co-habited by a male and female. There were approximately nine pairs of men’s shoes and several men’s shirts in the bedroom.
II
In this Part we first consider Mr. Fields’ claim of insufficiency of evidence to support a guilty verdict. See State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55. We, of course, conduct a sufficiency-review under the well-known Jackson v. Virginia standard. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18 (determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt).
The essential elements of the offense of violating La. R.S. 14:95.1 are: 1) the defendant possessed the firearm, 2) the defendant had a prior conviction for an enumerated felony, 3) the defendant possessed the firearm within ten years of the prior conviction, and 4) the defendant had the general intent to commit the offense. See State v. Husband, 437 So.2d 269, 271 (La.1983); State v. Ussin, 08-1577, p. 2 (La.App. 4 Cir. 4/8/09), 10 So.3d 848, 849. Here, Mr. Fields’ objection focuses on the “possession” element, as he concedes sufficient proof of prior convictions within the ten-year cleansing period.
Actual possession of a firearm is not necessary to prove the possession element of La. R.S. 14:95.1; constructive possession is sufficient. See State v. Day, 410 So.2d 741, 743 (La.1982). A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. See State v. Johnson, 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. The “mere presence of a defendant |7in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession.” Johnson, 03-1228 at p. 6, 870 So.2d at 999. The prosecution must prove that the defendant was aware that a firearm was in his presence and that the defendant had the general intent to pos *316 sess the weapon. Johnson, 03-1228 at p. 5, 870 So.2d at 998. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Id. Whether the proof is sufficient to establish possession turns on the facts of each case. State v. Harris, 94-0970, pp. 3-4 (La.12/8/94), 647 So.2d 337, 338-339; State v. Bell, 566 So.2d 959, 959-960 (La.1990).
Constructive possession of a firearm occurs when the firearm is subject to the defendant’s dominion and control. See State v. Mose, 412 So.2d 584, 585 (La.1982) (gun located in defendant’s bedroom sufficient for constructive possession); State v. Frank, 549 So.2d 401, 405 (La.App. 3 Cir.1989) (constructive possession found where gun was in plain view on front seat of a car the defendant was driving but did not own); State v. Lewis, 535 So.2d 943, 950 (La.App. 2 Cir.1988) (presence of firearm in defendant’s home; statement by defendant that gun belonged to his wife; and discovery of shoulder holster in the master bedroom indicated defendant’s awareness, dominion and control over the firearm). A defendant’s dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. State v. Bailey, 511 So.2d 1248 (La.App. 2 Cir.1987); State v. Melbert, 546 So.2d 948 (La.App. 3 Cir.1989).
In the present case, Agent Dean testified that he found the weapon sticking out between the mattress and box spring in Mr. Fields’ bedroom. Importantly, Mr. | ^Fields acknowledged that he knew of the presence of the weapon in the residence. The probation officers testified that men’s clothing, including Mr. Fields’ shoes, were found in the bedroom, and Agent Dean testified that it appeared that the bedroom was co-habited by a man and a woman.
Thus, we conclude that under Jackson v. Virginia a rational trier of fact could find beyond a reasonable doubt that Mr. Fields was knowingly in constructive possession of the firearm. We further conclude that a rational trier of fact could find that all the other elements of the offense of possession of firearm by a convicted felon were proven beyond a reasonable doubt.
Ill
We turn now to a consideration of Mr. Fields’ contention that the search of his residence by the probation officers violated his Fourth Amendment protections and to explain why we find that there is no Fourth Amendment violation which would require suppression of the firearm found in his bedroom.
A
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. U.S. Const. Amend. IV; La. Const. art. I, § 5; State v. Francis, 10-1149, p. 4 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708. Thus, when evidence is seized without a warrant as required by the federal and state constitutions, the burden is on the prosecution to show that a search is justified by some established exception to the warrant requirement. La.C.Cr.P. art. 703 D; State v. Anderson, 06-1031, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546.
Here, the trial court determined that the warrantless seizure was justified. We review a trial court’s findings of fact on a motion to suppress under a clearly 19erroneous standard, and its ultimate determination of Fourth Amendment reasonableness de novo. See State v. Pham, 01-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. On mixed questions of law and fact, we review the *317 underlying facts on an abuse of discretion standard, but review conclusions to be drawn from those facts de novo. Id. Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. Id.
B
Probationers have a reduced expectation of privacy. See United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). They are subject to reasonable warrantless searches of their persons and residences by their probation officer, even though less than probable cause may be shown. See State v. Malone, 403 So.2d 1234, 1238 (La.1981). This reduced expectation of privacy is based on a probationer’s conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the probationer is in compliance with the provisions of his probation. State v. Thomas, 96-2006, p. 2 (La.App. 4 Cir. 11/06/96), 683 So.2d 885, 886. A probationer is not, however, subject to the unrestrained power of the authorities. Id. And a search of the probationer may not be a subterfuge for a police investigation. Id. But a probation officer may conduct a warrantless search of a probationer’s property when “the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place.” Id. In order to determine reasonableness we must consider “(1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.” Id. at pp. 2-3, 683 So.2d at 886, citing Malone, 403 So.2d at 1239.
ImA probationer is, however, nonetheless obliged to “[p]ermit the probation officer to visit him at his home or elsewhere.” La. C.Cr.P. art. 895 A(4). Unquestionably, a probationer, like Mr. Fields, has a reduced expectation of privacy which allows a probation officer to conduct unannounced visits to verify that the probationer is in compliance with the provisions of his probation. See, e.g., Thomas, supra, 96-2006, p. 2, 683 So.2d 885, 886; Malone, supra, 403 So.2d at 1239; State v. Marino, 00-1131, p. 4 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 52. A “walk-through” inspection of a probationer’s residence to verify his current residence does not constitute a search. Probation officers are authorized to conduct a walk through inspection of a probationer’s home to verify his residence. See State v. Jones, 12-0438, pp. 12-13 (La.App. 4 Cir. 3/13/13), 119 So.3d 9 clarified on rehearing, (La.App. 4 Cir. 4/24/13), 119 So.3d 9. On rehearing, we reaffirmed that the probation officers were justified in entering the defendant’s bedroom to confirm that the defendant actually resided there. See also United States v. LeBlanc, 490 F.3d 361, 370 (5th Cir.2007).[4]
*318 Here, Mr. Fields gave his girlfriend’s address as his residence at his initial intake appointment. Agent Spino and Agent Dean both testified that Agent Spino Indecided to conduct a residence check because the defendant did not appear at his appointment the day before. Mr. Fields acknowledged that he was living with his girlfriend when Agent Spino and Agent Dean arrived at the apartment. The defendant told Agent Spino that the living arrangements were not working out and that he would be moving. At the time of the visit, however, Mr. Fields was still living in the apartment. Agent Dean went into the bedroom as part of the residence check, to determine if he had been actually living there. The agent saw men’s clothing in the bedroom and observed the handle of the handgun protruding from between the mattress and box spring of the bedroom.
At that point, under the plain view doctrine, the agent had the right to seize the weapon. See Kyllo v. United States, 533 U.S. 27, 31-32, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); Under the plain view doctrine, if officers are lawfully in a position from which they view an object that has an incriminating nature which is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. See Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); State v. Norals, 10-0293, 4 (La.App. 4 Cir. 7/30/10), 44 So.3d 907, 910. Because the officers were conducting a residence check, Agent Dean had the right to enter the bedroom to determine residency. Upon entering the bedroom, he observed the weapon in plain view and had the authority to seize it.
This is very similar to the circumstances in LeBlanc where the probation agent conducted a “walk-through” inspection of the defendant’s residence to verify his current residence, observed a shotgun in plain view sticking out of the defendant’s bed, and then seized the firearm as evidence of a probation violation. See LeBlanc, 490 F.3d at 363-364. There, too, the weapon was described to be in |12“plain sight”. Leblanc, 490 F.3d at 370. See also State v. Bolden, 09-33 (La.App. 5 Cir. 5/12/09), 13 So.3d 1168 (where a gun in plain view was found at a parolee’s residence during a walk-through).
C
Therefore, we conclude that there was no violation of the Fourth Amendment protections. Because Mr. Fields had no reasonable expectation of privacy vis-a-vis a reasonable residence inspection, and during the probation officer’s inspection the firearm was observed in plain view, the prosecution has established that no warrant was required to effect the lawful seizure of the weapon. We thus reject Mr. Fields’ contention on this point.
IV
In this Part we address Mr. Fields’ dual complaints arising out from the hearing on his motion for new trial. His trial counsel filed a motion for new trial. See La. C.Cr.P. art. 851. But then his counsel was absent from the hearing,[5] and the motion *319 was denied. Mr. Fields argues that the hearing was a critical stage of the proceedings and that the trial judge was in error to rule on the motion without his counsel being present. He alternatively argues that his counsel’s absence resulted in ineffective assistance. We explain why we disagree.
We first look to the grounds for Mr. Fields’ new trial motion. See La.C.Cr.P. art. 852 (“A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney.”) Here, those grounds were: (1) that the verdict was contrary to the law and to the evidence, under La.C.Cr.P. art. 851(1), and (2) that the ends of justice |13would be served by the granting of a new trial, even though the defendant may not be entitled to a new trial as a matter of strict legal right, under La.C.Cr.P. art. 851(5). The arguments raised in the motion for new trial were (1) whether the prosecution produced sufficient evidence, to prove beyond a reasonable doubt, that the defendant had possession of the weapon, and (2) whether the probation agents had the authority to enter Mr. Fields’ residence and conduct a walk-through of the residence, including the bedroom where the firearm was found. Notably, the motion and memorandum did not cite to any new witnesses or evidence to be introduced at the hearing on the motion for new trial, under La.C.Cr.P. arts. 851(3) and 854.
A contradictory hearing on a motion for new trial is not always necessary, especially when there is nothing to suggest that a defendant intends to call any witnesses or submit any evidence in support of his motion, or that he is prevented from doing so. See State v. Collins, 10-1181, p. 11 (La.App. 4 Cir. 3/23/11), 62 So.3d 268, 275, and State v. Kelly, 10-0853, p. 8 (La.App. 4 Cir. 12/12/10), 54 So.3d 1159, 1164.
We do not mean in this matter to excuse the absence of Mr. Fields’ counsel at the hearing. Our review of decisions indicates that the right to counsel attaches at pre-trial, trial and sentencing proceedings; very few cases discuss the right to counsel at post-trial proceedings, such as a motion for new trial. But, in this case, we do not need to reach the issue whether the post-trial hearing was a critical stage of the proceedings against Mr. Fields. While the Sixth Amendment right to counsel attaches after the commencement of adverse judicial criminal proceedings, not all activity in a criminal case is a “critical stage” of the proceedings requiring the assistance of counsel. See State v. Hattaway, 621 So.2d 796, 808-809 (La.1993), overruled on other grounds, State v. Carter, 94-2859 (La.11/27/95), 694 So.2d 367. The Hattaway court adopted the “functional” test set forth in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) to determine whether an encounter is a “critical stage” of the proceedings. Under this test, we are required “to analyze whether potential substantial prejudice to defendant’s rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.” Hattaway, 621 So.2d at 809 (quoting Wade, 388 U.S. at 227-28, 87 S.Ct. 1926). A critical stage has been described as a “critical pretrial [confrontation] ... where the results might well settle the accused’s fate and reduce the trial to a mere formality.” United States v. Wade, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). See also State v. Carter, p. 5, 664 So.2d at 372-373. Several federal courts of appeals have established that a motion for a new trial is not a critical stage; the federal Fifth Circuit, however, has not foreclosed that the right to counsel might attach on a *320 motion for new trial.[6] See Mayo v. Cockrell, 287 F.3d 336, 339-340 & n. 3 (5th Cir.2002) (having counsel during the motion for new trial phase may or may not be necessary to preserve the defendant’s rights to a fair trial and effective appeal); Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir.2003).
In any event, however, the outcome of the denial of Mr. Fields’ motion for new trial is inconsequential. We ourselves have reviewed the entire evidentiary record for sufficiency of evidence, the first ground of his motion, and concluded, as we explained in Part II, ante, that the evidence was sufficient to sustain his conviction. Thus, he is not entitled to a new trial on that ground and the absence of 114his counsel was not prejudicial to him. Also, we have reviewed the legal and factual issues regarding the denial of the motion to suppress, which is the second ground of his motion, and concluded, as we explained in Part III, ante, that his Fourth Amendment right to be free from unreasonable searches and seizures was not violated by the probation officers. Thus, he is not entitled to a new trial on that ground. Because we have decided the same issues with the same outcomes, the absence of his counsel at the motion hearing resulted in no prejudice to him.
And because there is no prejudice to him, he cannot succeed on his ineffective assistance of counsel claim, which also arises out of his counsel’s absence at the hearing.[7] In order to succeed on an ineffective assistance of counsel claim, a defendant must establish two criteria: (i) that his trial counsel’s performance was deficient and (ii) that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed”); State v. Fuller, 454 So.2d 119 (La.1984). Clearly, in the absence of prejudice to him, his counsel’s absence at the new trial hearing cannot have been ineffective.
V
Mr. Fields’ last assignment error relates to the habitual offender proceedings instituted against him. Mr. Fields committed three prior felonies: auto theft in 1998, possession of heroin in 2006, and possession of cocaine and heroin in 2009. At the trial, the prosecution produced evidence of the convictions resulting from | isthe 2006 and 2009 offenses in order to establish an essential element of the offense of convicted felon in possession of a firearm. Because those underlying felonies were used as an element of the firearm conviction, they may not be used in the multiple bill; otherwise, it would constitute prohibited double enhancement. See State v. Davis, 02-0565, p. 14 (La.App. 4 Cir. 12/11/02), 834 So.2d 1170, 1179. Thus, the only prior felony conviction which may be used to enhance the sentencing penalty under La. R.S. 15:529.1 is the *321 one arising from the 1998 auto theft offense.
The record evidence shows that the felony auto theft was committed on August 11, 1998 and that Mr. Fields entered a plea of guilty as charged on October 7, 1998. At the time of his plea, he was sentenced to two years custody, which was suspended on the condition of satisfactory completion of two years of active probation, credit for time served.[8] During his probationary period, Mr. Fields was arrested and incarcerated for about three months before being released again on probation. On March 15, 2000, Mr. Fields completed payment of his financial obligations and the court noted “this matter is closed.” Later, on May 7. 2001, the trial court granted Mr. Fields’ motion to dismiss and set aside the conviction under La.C.Cr.P. art. 893.
Mr. Fields now argues that the prosecution failed to prove that his conviction from 1998 was eligible for use as a predicate conviction under what is known as the ten-year cleansing period. See La. R.S. 15:529.1 C.[9] The termination date for 11fithe ten-year cleansing period extinguishes its use for multiple billing when it comes before the “date of the commission of the current offense,” which was September 16, 2010. Id. The commencement date is counted from “the expiration of the maximum sentence ... of each preceding conviction ... alleged in the multiple offender bill.” Id.
Mr. Fields here argues that the commencement date may have been the date that the case was closed and that the ten-year cleansing period has elapsed. But Mr. Fields did not file a written response to the multiple offender bill of information complaining about the use of any of the predicate convictions, and he did not object at the hearing that the prosecution had failed to prove that the cleansing period had not elapsed.[10] Ordinarily, when the record does not contain a written response by the defendant to the multiple bill or his oral objection, the issue is not preserved for appellate review. See La.C.Cr.P. art. 841; State v. Taylor, 12-0114 (La.App. 4 Cir. 11/28/12), 104 So.3d 679; State v. Phillips, 10-0582 (La.App. 4 Cir. 2/17/11), 61 So.3d 130; State v. Landfair, 10-1693 (La.App. 4 Cir. 7/20/11), 70 So.3d 1061.
But the transcript here reveals that the trial judge independently but erroneously calculated the ten-year cleansing period. Thus, we are satisfied that the district judge before imposing a sentence under the habitual offender law |18intended to insure that Mr. Fields was eligible for such sentencing despite the absence of a formal objection, either written or oral, by his counsel. Under such circumstances, we might deem it appropriate to remand for re-sentencing to afford the defendant an *322 opportunity to clarify his objection and support it with evidence.
Here, however, there is no need or purpose for a remand. The minimum sentence which the sentencing judge could impose even were he to conclude that Mr. Fields is not eligible for sentencing as an habitual offender is ten years without the benefit of probation, parole, or suspension of sentence. See La. R.S. 14:95.1 B. Ten years is also the minimum sentence that could be imposed under La. R.S. 15:529.1 A(l). Because this is the sentence which the trial judge imposed, and Mr. Fields has not specified any prejudice or harm in being designated as an habitual offender, we discern no sound basis for remanding for re-sentencing and affirm the sentence as modified by operation of law. See n.3, ante, at p. 314.
DECREE
We affirm the conviction and sentence of Shelby Fields.
AFFIRMED

. Mr. Fields’ appellate counsel assigned five errors and Mr. Fields pro se assigned two. Their respective assignments pertaining to denial of the motion to suppress are treated together as are those pertaining to the absence of defense counsel at the hearing on the motion for new trial.

. We acknowledge that appellant's counsel assigns this error to preserve the matter in the event that there is a change in the law by the United States Supreme Court.

. As we always do, we have examined the record for errors patent. See La.C.Cr.P. art. 920(2). We have detected none with respect to Mr. Fields' conviction. We have identified two errors patent respecting the sentence and the granting of the appeal, neither of which require corrective action by us. In the present case, Mr. Fields filed a motion for appeal after trial, but before sentencing, and the district court granted the appeal before sentencing. Although a defendant can take an appeal only from a conviction and sentence, we have held that an appeal taken prior to sentencing will not be dismissed "because '[d]ismissing the appeal would simply result in a delay of the appellate process and hinder defendant’s right to appeal.’ " State v. Warren, 538 So.2d 1036, 1037 (La.App. 4th Cir.1989), quoting from State v. Martin, 483 So.2d 1223, 1225 (La.App. 4th Cir.1986). Also, the trial court sentenced Mr. Fields to an illegally lenient sentence after adjudicating him a second felony offender. The trial court sentenced the defendant to serve ten years at hard labor. La. R.S. 14:95.1 provides that the sentence must be imposed without the benefit of parole, probation, or suspension of sentence. In addition, the trial court adjudicated the defendant to be a second offender. La. R.S. 15:529.1G provides that a sentence as a second offender must be imposed without the benefit of probation or suspension of sentence. The trial court, however, failed to include these prohibitions when imposing the sentence. Nonetheless, pursuant to La. R.S. 15:301.1 A, and State v. Williams, 00-1725, pp. 10-11 (La.11/28/01), 800 So.2d 790, 798-799, the sentence is deemed to have been imposed with these restrictions of benefits even in the absence of the district court delineating them. See State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675. Thus, there is no need for us to correct this part of the sentence.

. The LeBlanc court reviewed a probation officer's authority to enter a probationer’s residence,
[ T]he Louisiana Probation and Parole Officer’s Manual authorizes a probation officer to perform a 'residence verification’ to determine that an offender resides at a claimed residence ... ‘interpersonal contact’ is defined as [fjace to face contact with the offender which can occur in the field or in the office ...
A probationer is subject to state supervision as part of the "special needs” doctrine, including verification of where he lives, and cannot expect to be free from "interpersonal contact" at his residence. Were we to impose a requirement that a probation officer show reasonable suspicion of criminal activity before visiting a probationer at his home, supervision would become effectively impossible ...
*318 The Louisiana Supreme Court has noted that in supervising a probationer, a probation officer may have to take actions to accomplish a home visit that would intrude upon the liberty of an ordinary person, but not a probationer.”
490 F. 3d at 367-370.

. While the minute entry for the hearing indicates that defense counsel was present, the hearing transcript reveals that counsel was not present.

. Only three federal courts have held, on particular facts, that the motion for new trial phase is a critical stage of the prosecution. See Mayo v. Cockrell, 287 F.3d 336, 339-340 & n. 3 (5th Cir.2002) (emphasis added).

. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief filed initially in the district court where a full evidentiary hearing can be held. See, e.g., State v. Lipscomb, 807 So.2d 218 (La.2002). In the interest of judicial economy, however, an appellate court can consider an ineffective assistance claim if the record on appeal contains sufficient evidence to evaluate the merits of the claim.

. There were special financial conditions imposed in connection with the probationary period.

. La. RS. 15:529.1C provides:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions alleged in the multiple offender bill and the date of the commission of the Col-lowing offense or offenses. In computing the intervals of time as provided herein, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

.Mr. Fields did object to the identification of him by a fingerprint expert as being the same person convicted of the 1998 offense.