JAMES F. McKAY III, Judge.
_JjThe juvenile, R.L., appeals the judgment of the Juvenile Court for the Parish of Orleans, denying his motion to suppress the evidence and adjudicating him delinquent for the violation of La. R.S. 14:95.8, to wit, illegal possession of a handgun by a juvenile. For the reasons that follow, we affirm the trial court’s judgment.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
On the night of July 17, 2011, after 10:00 p.m., New Orleans Police Department Officers Melvin Wiltz, in the passenger seat, and Officer Mitchell, the driver of the police unit, were patrolling the 5th District in the area of Mandeville Street and N. Der-bigny Street. At about 10:30 p.m., they observed two juveniles and two adults standing on the corner in the 1600 block of Mandeville. Officer Wiltz testified that he observed four black males, two of those males he observed to be known juveniles, one being R.L. Officer Wiltz testified that he knew R.L. and that he resided at 1632 Music Street. Officer Wiltz believed that R.L. was in violation of the City’s curfew ordinance as he was not with a parent or guardian ]2after curfew in what is a high crime area.[1] Based on that situation, he took R.L. into custody. During R.L.’s detention, Officer Wiltz conducted a security/protective pat down search of R.L. and discovered a loaded hand gun in his front right waistband. He immediately handcuffed him and placed him in the rear seat of the police car.
On July 18, 2011, the State filed a delinquency petition charging that R.L. was in violation of La. R.S. 14:95.8, illegal possession of a fire arm by a juvenile. On August 10, 2100, defense counsel filed a motion to suppress the evidence based upon an unlawful and unconstitutional arrest. On October 27, 2011, R.L. appeared before Section “C” of the Orleans Parish Juvenile Court for his scheduled adjudication hearing. The juvenile court, during the course of the trial, conducted the hearing on the defense’s motion to suppress. The judge denied the motion to suppress and adjudicated R.L. to be a delinquent child. R.L. was sentenced to serve six (6) months in a secured detention with the Office of Juvenile Justice (“OJJ”), suspended, and one (1) year active probation with the OJJ. It is from this denial of R.L.’s motion to suppress and his adjudication of delinquency that R.L. appeals.
STANDARD OF REVIEW
As a court of review, we grant great deference to the juvenile court’s factual findings, credibility determinations, and assessment of witness testimony. State ex rel. W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61, writ denied, 2009-1129 (La.1/22/10), 25 So.3d 139. More pertinent to the case sub judice, a trial court’s ruling on a motion to suppress the evidence is entitled to great weight, 1.^because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State in the Interest of J.S., 2008-1401, p. 4 (La.App. 4 *1150 Cir. 2/18/09), 6 So.3d 904, 907; State in the Interest of P.L, 2011-1173, p. 4 (La.App. 4 Cir. 1/11/12), 81 So.3d 983, 986.
In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 883. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous than the standard of proof required in a criminal proceeding against an adult.” State in the Interest of AG., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93); State in the Interest of G.M., 617 So.2d 219, 221 (La.App. 5 Cir. 4/14/93).
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard of review is applicable in juvenile delinquency cases. State in the Interest of T.E., 2000-1810, p. 4 (La.App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const. art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. “While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.” State in the Interest of D.R., 2010-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile delinquency adjudication may not be disturbed by an appellate court |4unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979); State ex rel. E.D.C., 39,892 (La.App. 2 Cir. 5/11/05), 903 So.2d 571; State ex rel. T.W., 2009-532 (La.App. 3 Cir. 10/7/09), 21 So.3d 465; and State in the Interest of S.S., 557 So.2d 407 (La.App. 4 Cir.1990). In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.
ASSIGNMENT OF ERROR
In his sole issue on appeal, R.L. asserts that the juvenile court erred in admitting evidence obtained pursuant to an unlawful and unconstitutional arrest and in denying his motion to suppress the evidence.
The Fourth Amendment of the U.S. Constitution and Art. I, § 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. In an effort to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. State v. Tucker, 626 So.2d 707, 710 (La.1993); State v. Sykes, 04-1199, 04-0947, p. 4 (La.App. 4 Cir. 3/9/05), 900 So.2d 156, 158. On trial of a motion to suppress the evidence, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr. P. art. 703(D).
DISCUSSION
In the instant case, which combined the motion to suppress with the adjudication hearing, the State, in order to establish that it had a constitutional right to stop R.L. and to seize evidence offered against him, offered the testimony of the arresting officer, Melvin Wiltz. Officer Wiltz testified that on the evening of July 17, 2011, he observed R.L. and three other black males standing on the sidewalk in I Ahe 1600 block of Mandeville Street, Of *1151 ficer Wiltz noted that he was familiar with R.L. from previous stops and knew that he was a juvenile. He testified that he detained him for a curfew violation. Before Officer Wiltz placed R.L. in the police car, he conducted a pat down for his safety. During the pat down he discovered the loaded handgun in R.L.’s front right waistband.
At this time, during the course of Officer Wiltz’s testimony, the State offered, filed and introduced the hand gun into evidence. The defense did not object and the trial court admitted the hand gun into evidence.
On cross-examination, Officer Wiltz reiterated that he knew R.L. was a juvenile from previous stops. He also affirmed that on the evening in question he saw R.L. with three other black males. He testified that there were other people on the corner, but he did not elaborate. Officer Wiltz also testified that this was an area that he patrolled regularly and that it was a high crime area. Officer Wiltz confirmed that this was a residential area but that he knew that R.L. resided at 1682 Music Street not in the 1600 block of Mandeville Street.
The defense called its first witness, T.L., R.L.’s 13 year old sister. T.L. testified that the officers came to her Aunt Crystal’s house on Mandeville Street and N. Derbigny Street, and that her bother R.L. was sitting on the porch. She testified that an officer pointed a finger at R.L. and told him to “come here.” The officer, according to T.L., began searching R.L., found something and put him in handcuffs. She also testified that her mother was on the scene but that the officers did not listen to her mother. On cross-examination, T.L. testified that her mother was not around at the time of her brother’s arrest. She testified that her mother was coming out of the grocery store, “11 between 12” o’clock (12:00 midnight). Her mother had been inside the store “getting her something to eat.” When her mother 16saw the police, the gun had already been discovered, and R.L. was handcuffed. T.L.’s mother allegedly instructed her to call her aunt and uncle, “Patricia and Trent.”
The defense called its second witness, Trent Gibson, R.L.’s uncle. Mr. Gibson testified that R.L. had lived with him since he was two weeks old. He said that on the night R.L. was arrested, “he (R.L.) was by his aunt’s house on Mandeville.” He was not at the scene when R.L. was arrested. On cross-examination, Mr. Gibson testified that he arrived on the scene after R.L. had been arrested. He stated that one of the senior offices pulled him aside and told him that R.L. had been found with a gun.
The testimony elicited from Officer Wiltz establishes that R.L. was irrefutably in violation of the City’s juvenile curfew ordinance. Specifically, R.L., a known juvenile, was out in the street after 10:00 p.m., in a high crime area and not in the company of an adult guardian. A situation that is necessarily dangerous for the juvenile and the impetus for the curfew ordinance. Immediately following his detention for the juvenile curfew violation, and pursuant to NOPD policy, R.L. was not placed in handcuffs. It was only after a security pat down was conducted, which is also NOPD policy, that the loaded gun was discovered in his waistband. R.L. was then handcuffed and placed in the police vehicle. As his young sister T.L. testified, it was only after the gun was discovered and R.L. was under arrest that his mother allegedly arrived on the scene.
Based on the record, T.L.’s testimony contained numerous irrelevancies and inconsistencies. There is no other corroborating testimony that R.L. was on his Aunt Crystal’s porch when he was allegedly summoned by Officer Wiltz and 17ultimately arrested. The trial court *1152 clearly found the testimony of Officer Wiltz to be more credible.
Mr. Gibson testified that R.L. lived with him since he was a baby. But, he could only testify as to where he believed R.L. to be on the night he was arrested as he only arrived on the scene after the arrest had happened.
In denying R.L.’s motion to suppress the evidence and in finding R.L. guilty as charged, the juvenile court clearly accepted the testimony of the State’s witnesses over the defense witnesses Based on the record before us, we conclude that the juvenile court, as a rational trier of fact, found after examining both the facts and law that the essential elements of the charged offense was proven beyond a reasonable doubt. We cannot conclude that this decision was manifestly erroneous or clearly wrong.
Accordingly, we affirm the juvenile court’s judgment denying R.L.’s motion to suppress the evidence and adjudicating R.L. delinquent.
AFFIRMED

. Section 54-414 of the Municipal Code of the City of New Orleans.