TERRI F. LOVE, Judge.
|! This appeal arises from the juvenile court’s denial of a juvenile’s motion to suppress evidence, a handgun, which was discovered during a pat-down for officer safety. Once the juvenile court denied his motion to suppress evidence, the juvenile entered a plea, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), for a violation of La. R.S. 14:95.8, illegal possession of a handgun by a juvenile, and preserved his right to appeal the denial of the motion to suppress evidence. The juvenile court committed the juvenile to the Department of Public Safety and Corrections for placement in a non-secure facility for a term not to exceed six months, with fifteen days suspended, and one year of active probation. We find that the trial court did not abuse its discretion in denying the motion to suppress evidence based on the totality of the circumstances in this case and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On Saturday, October 8, 2011, at approximately 9:57 p.m., Officers Kevin Doucette and Patrice Swan of the New Orleans Police Department were on proactive patrol in the Seventh District in New Orleans East. According to Officer Doucette, he and his partner were looking for people who were committing crimes in that area, which “experienced an increase in property and persons crimes.”
|2As Officer Doucette was driving the marked police car on Lourdes Street and attempted to make a left turn onto Corsica Place, he stated that he observed four juveniles, including T.H.,[1] walking in the street. Upon stopping and exiting the police car, Officers Doucette and Swan called the four juveniles to the front of the police car. Three of the juveniles walked to the police car; T.H. continued to walk away. Officer Doucette approached T.H., escorted him to the police car, and directed him to place his hands on the police car. Officer Doucette conducted a pat-down of T.H. and retrieved an unloaded handgun. T.H. was then arrested.
Pursuant to the Louisiana Children’s Code, a petition alleging T.H. to be delinquent was filed based upon the alleged commission of illegal possession of a hand *706 gun by a juvenile, a violation of La. R.S. 14:95.8. The juvenile court found probable cause for T.H.’s arrest, remanded him, and set bond at $15,000.00. T.H. pled not guilty.
The suppression hearing and the adjudication hearing were held on the same date. The suppression hearing was conducted first, and the juvenile court denied the juvenile’s motion to suppress the handgun. T.H. entered a Crosby plea,[2] preserving his right to appeal the denial of the motion to suppress evidence. Following a disposition hearing, which examined the pre-dis-positional investigation, the juvenile court imposed a disposition of commitment to the Department of Public Safety and Corrections for placement in a non-secure facility for a term not to exceed six months, with fifteen days suspended, and one year of active probation. T.H.’s appeal followed.

\ ¡MOTION TO SUPPRESS

T.H. contends that the juvenile court erred in denying his motion to suppress the handgun, since the handgun was allegedly obtained in violation of his Fourth Amendment rights under the United States Constitution and Article I, § 5 of the Louisiana Constitution. T.H. asserts that reasonable suspicion was lacking when Officer Doucette approached him and conducted a search. Therefore, the detention and the subsequent search were unlawful and the fruit of the search — the handgun — should have been suppressed. We disagree.

Standard of Review

In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D). “A trial judge’s decision to deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by a preponderance of evidence.” State v. Adams, 99-2123, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 113, 117. Therefore, when a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, i.e., unless such ruling is not supported by “reliable evidence.” State v. Green, 94-0887, p. 11 (La.5/22/95), 655 So.2d 272, 281. “[T]he district court’s findings of fact on a motion to suppress” are reviewed “under a clearly erroneous standard” and “the district court’s ultimate determination of Fourth Amendment reasonableness” is reviewed de novo. State v. Pham, 01-2199, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Accordingly, “[o]n mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo.” Id.
| AThe Initial Investigatory Stop
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. “If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.” State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. “It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonablé subject only to a few specifically established and well-delineated exceptions.” State v. Owen, 453 So.2d 1202, 1205-06 (La.1984).
*707 This Court recently set forth the law regarding investigatory stops in State v. Harveston, 10-1402, p. 7 (La.App. 4 Cir. 5/11/11), 71 So.3d 954, 957, as follows:
La. C. Cr. P. art. 215.1(A) codifies the U.S. Supreme Court’s authorization of stops based on reasonable suspicion set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
“Reasonable suspicion” to stop is something less than probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his or her knowledge to justify an infringement of the suspect’s rights. State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37.
A person is seized within the meaning of Article I, § 5 of the Louisiana Constitution when that person is either “actually stopped” or when an “actual stop” of the person is “imminent.” State v. Tucker, 626 So.2d 707, 712 (La.1993). An | factual stop” occurs when an individual “submits to a police show of authority or he is physically contacted by the police.” Id. An “imminent actual stop” occurs “when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain.” Id.
The four juveniles were walking on Corsica Place, the street on which K.B. allegedly lived. In the instant case, K.B., a juvenile walking with T.H., testified that: “[w]e was [sic] walking home from by my house heading to go bring a friend home,” when they saw the police car turn the corner and face them. KB. testified that when the NOPD officers stopped the police car, he was already on the sidewalk and that T.H. continued walking away. However, when questioned by the juvenile court judge, KB. admitted that all four juveniles were walking in the center of the street for some period of time before walking toward the sidewalk. KB. stated that this was due to trucks blocking access to the sidewalk. KB. testified that the streetlight was operational.
According to K.B., all four juveniles were ordered to the police car, but were not informed as to why. KB. and two of the juveniles went to the car; T.H. continued walking away, but did not run. K.B. further stated that T.H. did not “tug” at his pants. Officer Doucette and K.B. testified that Officer Doucette approached T.H. and escorted him to the police unit. KB. testified that the NOPD officers “unbuckled they [sic] little buckle thing to their gun and was like about to pull it out on him and they grabbed him and they took him to the car.” Finally, K.B. testified, when asked about the alleged search of T.H., that “[y]ou can say patted him down.”
| (¡Officer Doucette testified that the four juveniles were stopped, during a proactive patrol, to advise them to walk on the sidewalk because the area was “poorly lit” and the four juveniles were walking in the middle of the street wearing dark clothing. Officer Doucette also stated that he wanted to see if the four juveniles lived in the area because it was approximately 9:57 p.m., which Officer Doucette believed to be *708 three minutes from curfew.[3] Officer Dou-cette testified the four juveniles were not ordered to freeze. However, when Officer Swan asked the four juveniles to walk towards the front of the police car, T.H. walked away “in a rapid direction” across a lawn immediately and “tugged on his waistband with his right hand.” The lawn T.H. was walking on was not T.H.’s residence. Officer Doucette testified that: “To be honest,” T.H. “does not even live anywhere close to the area I stopped him at.” Officer Doucette did not see T.H. with a handgun. When questioned by the juvenile court judge about T.H. allegedly tugging at his pants, Officer Doucette stated that “[d]ue to my experience, ma’am, when I see individuals do that, they’re normally trying to pull a handgun up before they either try to run or move at a more rapid pace.”
Upon consideration of the testimony, the juvenile court judge stated that there “was a violation of Municipal Code Section 54.401, Obstructing Public Passages, which then warranted reasonable suspicion and a stop of the youth at that point in time” and denied T.H.’s motion to suppress.
Given the juvenile court judge’s ability to examine the credibility of witnesses, a review of the testimony, and that both Officer Doucette’s and KB.’s testimony placed the four juveniles walking in the middle of the street, we do not 17find that the juvenile court abused its discretion in finding reasonable suspicion for the stop. Therefore, under the totality of the circumstances, Officer Doucette possessed reasonable suspicion to justify the investigatory stop of T.H.

Pat-Down

Because we find there was adequate reasonable suspicion to justify the investigatory stop of T.H., we must address whether the subsequent pat-down of T.H. was justified.
“When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon” or “[i]f the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.” La.C.Cr.P. art. 215.1(B). “[A] police officer has the right to conduct a limited “frisk” for weapons after making the investigatory stop when he has drawn a specific reasonable inference from facts and experience that he is dealing with an armed and dangerous individual.” State v. Wade, 390 So.2d 1309, 1311 (La.1980). See also State v. Taylor, 96-1843, p. 3 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 769. “The purpose of allowing a limited weapons search is to prevent harm to police officers by allowing action prior to a crisis stage.” Id. at 1312.
Officer Doucette testified that “[d]ue to my experience, ma’am, when I see individuals do that, they’re normally trying to pull a handgun up before they either try to run or move at a more rapid pace.” Therefore, once T.H. was legally stopped, Officer Doucette could have reasonably suspected that T.H. possessed a dangerous weapon based on Officer Doucette’s experience. Further, Officer Doucette testified that the area “experienced an increase in property and persons Retimes.” Officer Doucette conducted a pat-down of T.H. and “felt a hard metal like object, which was consistent to the butt of a handgun.” “If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, *709 at which time he shall either return it, if lawfully possessed, or arrest such person.” La.C.Cr.P. art. 215.1(C). Because T.H. did not lawfully possess the handgun that the parties stipulated to, T.H. was lawfully arrested. Therefore, coupled with the juvenile court’s finding of reasonable suspicion, we do not find that the juvenile court abused its discretion in denying T.H.’s motion to suppress the evidence and affirm.

DECREE

For the above mentioned reasons, we find that under the totality of the circumstances, reasonable suspicion existed to justify the investigatory stop of T.H. Thus, the pat-down for the safety of the NOPD officers revealed the handgun in T.H.’s possession and it was legally seized. Therefore, we find the juvenile court did not abuse its discretion in denying T.H.’s motion to suppress the evidence and affirm.
AFFIRMED
BONIN, J., dissents.

. To maintain the confidentiality of the proceedings required by Louisiana Children's Code Articles 407 and 412, initials for the juvenile defendant in this case are used.

. The Louisiana Supreme Court in State v. Crosby, 338 So.2d 584 (La. 1976) held that a defendant may enter into a plea agreement and maintain his right to appeal pre-plea rulings.

. The testimony revealed that Officer Dou-cette was mistaken about the time of curfew because it was a Saturday night, which meant curfew began at 11:00 p.m.