| STATE OF LOUISIANA IN THE INTEREST OF K.K. | * | NO. 2022-CA-0549 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2021-123-01-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Daniel L. Dysart, Judge Rachael D. Johnson)

**DYSART, J., CONCURS IN THE RESULT**

Bethany Samhan
LOUISIANA CENTER FOR CHILDREN'S RIGHTS
1100-B Milton Street
New Orleans, LA 70122

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

      COUNSEL FOR APPELLANT

Tenee Felix
Orleans District Attorney's Office
1100-B Milton Street
New Orleans, LA 70122

Jason Rogers Williams
DISTRICT ATTORNEY
Brad Scott
Chief of Appeals
ORLEANS PARISH DISTRICT ATTORNEY
619 S. White Street
New Orleans, LA 70119

    COUNSEL FOR APPELLEE

**AFFIRMED**
**October 12, 2022**

RDJ
EAL

This is a juvenile delinquency appeal. The juvenile, K.K.,[1] was adjudicated delinquent on one count of illegal possession of a handgun by a juvenile and one count of unauthorized use of a motor vehicle. The juvenile court imposed a disposition of six months for illegal possession of a handgun by a juvenile and nine months for the unauthorized use of a motor vehicle. K.K. appealed. For the reasons that follow, we affirm and remand with instructions.

---

[1] In accordance with the Louisiana Uniform Rules, Courts of Appeal, Rules 5-1 and 5-2, initials are used throughout this opinion to protect the juvenile's identity. *See, e.g.*, *State ex. rel. K.D.*, 13-1274, p. 1, n. 1 (La. App. 4 Cir. 4/9/14), 140 So.3d 182, 183.

1

## Statement of the Facts

On April 29, 2021, Jonathan Williams' ("Mr. Williams") Ford F-250 truck was stolen from his driveway in Ascension Parish, Louisiana. Mr. Williams testified that multiple items were taken from his truck, including its keys, tools, a ladder, sunglasses, documents, and a loaded Glock handgun. He further testified that he did not see K.K. in his truck, nor did he see him in possession of the Glock handgun. The truck had GPS tracking capabilities, which law enforcement officers used with Mr. Williams to track the stolen vehicle. Law enforcement twice attempted to stop the vehicle in a high-speed chase in Orleans Parish, Louisiana, but were unable to do so.

Trooper Jeffrey Theriot ("Trooper Theriot"), aided by the truck's GPS tracking capabilities, eventually followed the truck to around the 2900 block of Feliciana Street in New Orleans, Louisiana. He testified that he saw three juveniles, including K.K., walking away from the vehicle. He further testified that he saw the truck's lights flash as if someone had locked the vehicle. Trooper Theriot took photographs of the three juveniles with his iPhone and shared them, along with a description of the juveniles, with law enforcement in the area. Trooper Theriot testified that he thought the best he could do under the circumstances was to serve as a witness until other officers arrived on the scene because he was in a remote area and because the juveniles were potentially armed with the Glock handgun that was in the truck at the time it was stolen.

Trooper Kip Felon, Jr. ("Trooper Felon"), testified that he was notified of a pursuit of Mr. Williams' stolen vehicle and that he received a description of three juveniles as well as a photograph. Based on the description and photograph he received, he determined that he saw the same three juveniles as Trooper Theriot

had seen.  Trooper Felon testified that he saw the three juveniles get into a car that was later determined to be an Uber.  In a marked vehicle, he followed the Uber vehicle to its drop-off location in the Lower 9th Ward in New Orleans, Louisiana, and continued to follow the three juveniles as they walked on foot, periodically losing sight of them, until they arrived at a residence on the 1400 block of St. Maurice Avenue.[2]  Trooper Felon testified that the three juveniles were sitting on the front porch of the house.  He further testified that he parked behind the house and waited for backup.

Trooper Leander Journee ("Trooper Journee"), Trooper Daniel Graff ("Trooper Graff"), and Jason Gagilano ("Mr. Gagilano"), an investigator with the Louisiana State Police, responded to Trooper Felon's request for backup.  Trooper Journee testified he was aware that the juveniles could be armed with the firearm that was located in the stolen truck.  Mr. Gagilano also testified that the heard Trooper Theriot's initial investigation broadcast over the radio.  He further testified that the arresting officers were concerned the juveniles would run from the scene and that the possibility that the juveniles were armed with the missing Glock handgun made the situation potentially more dangerous than a typical automobile stop.

The officers announced that they were with the Louisiana State Police as they approached the residence on St. Maurice Avenue.  Trooper Graff testified that K.K. was "at the bottom of the stoop" of the front porch and that the other two juveniles "were on the porch itself."  Trooper Graff testified that when he approached the house on St. Maurice Avenue, he did not see K.K. tugging at his

---

[2] It is perhaps worth noting that various parties in the instant litigation referred to location of K.K.'s arrest as being on "Maurice Avenue," in their briefs and at trial, but the full name of the street is likely St. Maurice Avenue, as indicated in the State's Petition.

3

waistband or adjusting his clothing. He further testified that K.K. did not attempt to evade the officers upon their approach of the residence. The officers conducted a pat-down search of all three of the juveniles and subsequently handcuffed them after finding that all three of them had handguns. Trooper Graff testified that he conducted the pat-down search of K.K. He further testified that he found a semiautomatic pistol in K.K.'s waistband and the keys to Mr. Williams' stolen Ford F-250 truck in K.K.'s hand.

### Statement of the Case

On May 18, 2021, the State filed a delinquency petition (the "Petition") in the Juvenile Court for the Parish of Orleans, charging K.K. and two other juveniles, for criminal activity that took place on April 29, 2021.[3] The State charged K.K. with the following crimes:

> **COUNT 01: (AS TO ALL DEFENDANTS)**
> **LA R.S. 14:68.4** relative to **UNAUTHORIZED USE OF A MOTOR VEHICLE**, to wit: THE INTENTIONAL TAKING OR USE OF A **FORD F-250** BELONGING TO **J.W.**, EITHER WITHOUT THE OWNER'S CONSENT OR BY MEANS OF FRAUDULENT PRACTICE OR REPRESENTATIONS, BUT WITHOUT ANY INTENT TO PERMANENTLY DEPRIVE, on **APRIL 29, 20121** [sic] at approximately **8:00 AM** ON **THE STREETS OF NEW ORLEANS**, in the Parish of Orleans.
>
> **COUNT 05: (AS TO [K.K.] ONLY)**
> **LA R.S. 14:95.8** relative to **ILLEGAL POSSESSION OF A HANDGUN BY A JUVENILE**, to wit: THE INTENTIONAL POSSESSION OF A HANDGUN, A TAURUS 9MM, ON THE OFFENDER'S PERSON WHEN THE OFFENDER HAS NOT YET ATTAINED THE AGE OF EIGHTEEN YEARS, on **APRIL 29, 20121** [sic] at approximately **10:05 AM** in the **1400**

---

[3] The State also alleged additional charges in the Petition that were not applicable to K.K., and they are redacted in the record.

**BLOCK OF ST. MAURICE AVENUE**, in the Parish of Orleans.

K.K. entered a plea of not guilty on all counts.

On July 16, 2021, K.K. filed a Motion to Suppress Evidence, which the juvenile court set for hearing on the same date as the adjudication hearing. After multiple continuances, the adjudication hearing took place on October 19, 2021. At the conclusion of the hearing, the juvenile court denied the Motion to Suppress Evidence and adjudicated K.K. delinquent for both offenses charged in the Petition.

K.K. filed a Motion for Deferred Disposition on November 19, 2021, which the juvenile court set for hearing on November 22, 2021. After multiple continuances, the juvenile court held a disposition hearing on March 10, 2022 and ordered the Clerk of Court to issue a warrant for K.K.'s arrest due to his failure to appear at the hearing. K.K. was arrested pursuant to the warrant on April 3, 2022. K.K. filed a Motion for Immediate Release on June 24, 2022. At a subsequent disposition hearing on June 28, 2022, the juvenile court denied K.K.'s Motion for Immediate Release. Additionally, the juvenile court imposed a six-month disposition for illegal possession of a handgun by a juvenile and nine months for the unauthorized use of a motor vehicle, with the sentences to run consecutively. In the written judgment, the trial court set the above terms of imprisonment to run concurrently. This appeal followed.

### Errors Patent

Following this Court's determination in *State ex rel. A.H.* that conducting an errors patent review is warranted in juvenile delinquency appeals, this Court routinely reviews the face of the record in such proceedings for errors patent. 10-

1673, p. 9 (La. App. 4 Cir. 4/20/211), 65 So.3d 679, 685. *See also State ex. rel. C.H.*, 21-0516, p. 19 (La. App. 4 Cir. 1/26/22), 335 So.3d 451, 463 ("[T]his court has adopted the practice of conducting an error patent review in juvenile delinquency cases.") (citation omitted). K.K. contends that the juvenile court's disposition contains three errors patent. First, K.K. asserts that the trial court failed to indicate that K.K. would be afforded credit for time any time served prior to disposition. Second, K.K. contends that the trial court failed to advise K.K. of the prescriptive periods to apply for post-conviction relief. Third, K.K. argues that the judgment of disposition conflicts with the hearing transcript.

As to the first error patent, the State concedes that K.K. should be credited for any time served in accordance with La. Ch.C. art. 898(A). K.K. acknowledges, however, that the record does not show whether K.K. actually served time in a secure detention facility prior to disposition. Thus, we order the juvenile court to amend the disposition to give K.K. credit for any time served in a secure detention facility prior to the imposition of disposition. Further, we instruct the juvenile court to note the amendment in the minute entry. *See State ex. rel. R.M.*, 16-0972, p. 9 (La. App. 4 Cir. 1/11/17), 209 So.3d 217, 223.

Concerning the second error patent, the State generally acknowledges that trial courts should advise defendants of post-conviction relief pursuant to La. C.Cr.P. art. 930.8. There is no evidence in the record that the juvenile court advised K.K. of the two-year prescriptive period for filing an application of post-conviction relief in accordance with La. C.Cr.P. art. 930.8. Accordingly, we remand this matter to the juvenile court and instruct the juvenile court to advise K.K. in writing of the two-year prescriptive period for filing an application for post-conviction relief pursuant to La. C.Cr.P. art. 930.8. Additionally, we order

6

the juvenile court to file proof of this notice in the record. *See State ex. rel. H.J.*, 17-0518, pp. 9-10 (La. App. 4 Cir. 1/24/18), 238 So.3d 586, 592.

With respect to the third error patent, it is undisputed that transcripts prevail over minute entries and judgment entries. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983) ("Since there is a discrepancy between the minutes and the transcript, the transcript must prevail.") (citation omitted); *State ex. rel. N.H.*, 08-2464, p.2, n.2 (La. App. 1 Cir. 3/27/09), 11 So.3d 27, 29, n.2; *State ex rel. J.S.*, 18-1245, p.13 (La. App. 1 Cir. 12/21/18), 268 So.3d 311, 320 (La. App. 1 Cir. 12/21/18) ("If there is a discrepancy between the minutes and the transcript, the transcript must prevail.") (citation omitted). Nevertheless, K.K. contends that remand is still warranted in the case *sub judice* because the transcript is unclear as to the exact disposition imposed for the adjudication of delinquency for the offense of unauthorized use of a motor vehicle. Additionally, K.K. asserts that the juvenile court was unclear as to whether the disposition for that offense as well as the disposition for the offense of illegal possession of a handgun by a juvenile should run concurrently or consecutively. We remand and order the juvenile court to clarify its judgment as to the disposition for both offenses.

### Discussion

K.K. asserts two assignments of error. First, K.K. argues that the juvenile court erred in denying the Motion to Suppress Evidence. Second, K.K. contends that the juvenile court erred in allowing inadmissible hearsay to be introduced into evidence at the adjudication hearing and thereby form a basis for the verdict. We disagree.

7

*I. Motion to Suppress Evidence*

As to the first assignment of error, K.K. argues that the arresting officers had neither probable cause nor reasonable suspicion to arrest him. Moreover, K.K. contends that there were no exigent circumstances justifying search and seizure without a warrant. The State, however, argues that the officers had probable cause for K.K.'s arrest and that there were exigent circumstances that justified the warrantless arrest. This Court agrees with the State that there were exigent circumstances which justified K.K.'s arrest.

"The Fourth Amendment of the U.S. Constitution and Art. I, § 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures." *State ex. rel. R.L.*, 11-1721, p. 4 (La. App. 4 Cir. 5/30/12), 95 So.3d 1147, 1150. Accordingly, "to discourage police misconduct, evidence recovered as a result of an unconstitutional search or evidence recovered as a result of an unconstitutional search or seizure is inadmissible." *Id.* (citations omitted).

"Warrantless entries into the home for arrest or seizure are invalid in the absence of exigent circumstances." *State v. Brisban*, 00-3437, p. 5 (La. 2/26/02), 809 So.2d 923, 927 (citing *Payton v. New York*, 445 U.S. 573 (1980)). "The front porch of a private residence falls within the curtilage of the home for Fourth Amendment purposes because it encompasses 'the area around the home to which the activity of home life extends.'" *State v. Deary*, 99-0627, p. 1 (La. 1/28/00), 753 So.2d 200, 201 (quoting *Oliver v. U.S.*, 466 U.S. 170, 182, n. 12 (1984)). It "does not," however, "necessarily enjoy the same measure of protection accorded the home by the Fourth Amendment . . . because of 'an almost implicit understanding and custom in this country that, in the absence of signs or warning, a

residence may be approached and the occupants summoned to the door by knocking.'" *Id.* (quoting *State v. Sanders*, 374 So.2d 1186, 1189 (La. 1979)).

"[W]hile a warrant is generally required to search a home or its curtilage, 'the exigencies of the situation' can 'make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *State v. Summers*, 15-1363, p. 6 (La. 7/29/15), 170 So.3d 960, 964 (quoting *State v. Lee*, 05-2098, pp. 14-15 (La. 1/16/08), 976 So.2d 109, 122) (additional citation omitted). "Exigent circumstances justify a warrantless entry, search, or seizure when 'police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that" either "evidence or contraband will imminently be destroyed" or that "the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons." *State v. Warren*, 05-2248, pp. 11-12 (La. 2/22/07), 949 So.2d 1215, 1225. The officers must know the exigent circumstances "at the time of the warrantless entry," and they "cannot be based on evidence discovered during the search." *Id.* at 10, 949 So.2d at 1224 (citations omitted).

"In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant." *State ex. rel. T.H.*, 12-0223, p. 3 (La. App. 4 Cir. 12/12/12), 106 So.3d 703, 706 (citing La. C.Cr.P. art. 703(D)). "A trial judge's ruling on a motion to suppress the evidence is entitled to great weight, because the trial judge has the opportunity to observe the witnesses and weigh the credibility of their testimony." *State ex. rel. P.L.*, 11-1173, p. 5 (La. App. 4 Cir. 1/11/12), 81 So.3d 983, 986 (citation omitted). "[T]he district court's findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and the district court's ultimate determination of Fourth

Amendment reasonableness is reviewed *de novo*." *State ex. rel. T.H.*, 12-0223, p. 3, 106 So.3d at 706 (quoting *State v. Pham*, 01-2199, p. 3 (La. App. 4 Cir. 1/22/03), 839 So.2d 214, 218). Thus, for "mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts *de novo*." *Id.*

In the case *sub judice*, the juvenile court heard testimony from numerous law enforcement officers who participated in various stages of the investigation concerning Mr. Williams' stolen truck and subsequent arrest of K.K. and two other juveniles on April 29, 2021. The juvenile court denied K.K.'s Motion to Suppress Evidence, finding that the officers had reasonable suspicion to believe that the juveniles might be armed because they had been notified that a Glock handgun was in the vehicle when it was stolen. The juvenile court explained:

> Motion to suppress is denied. We had one, not two, not three, but four troopers—three troopers and an investigator that all testified that the initial part of this investigation began in Ascension Parish as a result of a stolen vehicle. At the time the investigation began the owner of that stolen vehicle also testified or stated that he had a weapon that was in the vehicle that was loaded and was on the driver's side, I believe, in the door. At that time, the State Troopers who all—at some point or another the first State Trooper had reasonable suspicion to believe that the children—or that somebody would be armed on that porch because as he previously stated he locates the F-250 prior to even making it to the residence on Maurice Street.

In light of the testimony of the law enforcement officers who testified at the adjudication hearing about the circumstances which led to locating the stolen truck and the juveniles, as well as the subsequent arrest of K.K., we find no error in the juvenile court denying the Motion to Suppress Evidence.

10

*II. Inadmissible Hearsay*

Concerning the second assignment of error, K.K. contends that the juvenile court erred because although hearsay is admissible in a Motion to Suppress Evidence hearing, it should not have formed the basis of the juvenile court's verdict in the adjudication proceeding. The State asserts that Trooper Theriot's and Trooper Felon's testimony was admissible to explain the course of their investigation and, even assuming *arguendo* the officers' testimony contained inadmissible hearsay, the juvenile court's error was harmless. We agree with the State that the testimony was permissible to provide the juvenile court with detailed information about the circumstances of the investigation.

La. C.E. art. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). In *State v. Hawkins*, the Louisiana Supreme Court explained that "the testimony of a police officer may encompass information provided by another individual without constituting hearsay if offered to explain the course of a police investigation and the steps leading to the defendant's arrest." 96-0766 (La. 1/14/97), pp. 4-5, 688 So.2d 473, 477 (citations omitted). The Court ruled that the detective's testimony concerning information he received from an informant "that there were several individuals in the car with the perpetrator was relevant and not hearsay" because "[t]his testimony squarely fits" within the above rule. *Id.* at 5, 688 So.2d at 478. The Court found, however, that the latter part of the detective's testimony identifying the defendant as the perpetrator of the crime constituted inadmissible hearsay. *Id.*

In the case *sub judice*, the juvenile court overruled K.K.'s objection and allowed Trooper Theriot's to testify that he learned about the stolen truck when it

11

was broadcast on the police radio because it was "from the dispatch within the line of his duty." The juvenile court again overruled K.K.'s hearsay objection while Trooper Theriot testified that he was communicating with Ascension Parish law enforcement and receiving GPS information as to the stolen truck's location in real time. Additionally, the juvenile court overruled a hearsay objection[4] concerning Trooper Felon's testimony about how he first became involved in the investigation, reasoning that Trooper Felon "was in the course and scope of his employment as a trooper in part of an investigation." None of this testimony identifies K.K. as a perpetrator of a crime. Rather, we find that it is "relevant and not hearsay." *Id.* Moreover, it fits within the rule outlined in *Hawkins* that allows officers to explain the course of their investigations. *Id.* at pp. 4-5, 688 So.3d at 477-78. Accordingly, we conclude that the juvenile court did not err in allowing this testimony to form the basis of its verdict in the adjudication proceedings.

## Decree

For the aforementioned reasons, we affirm the juvenile court's ruling denying the Motion to Suppress Evidence and the adjudication of delinquency in this matter. We remand, however, with instructions to amend the disposition giving K.K. credit for time served in a secure detention facility prior to disposition; to advise K.K. in writing about the time delays for seeking post-conviction relief; and to clarify the judgment regarding whether the sentences for the offenses are to run consecutively or concurrently.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**

---

[4] Counsel for K.K. did not raise this objection.

12